KUNZE *v.* TAWAS STATE SAVINGS BANK.

1. BANKS—DEPOSITS—TRANSFER OF CREDIT BY CASHIER.
   Petitioners deposited a draft in a bank, and at the same time left their pass-book to be balanced, which was returned to them after the failure of the bank. It then appeared that the cashier had stricken out the credit item made at the time the draft was deposited, and transferred it to a lumber company to which petitioners had previously given their note. *Held,* that a previous understanding that the money received on the draft should be applied on the note did not authorize the cashier to make the transfer of such credit item at a time when the note had passed beyond the control of the lumber company.

2. BANK DEPOSITORS—CREDITORS—CORRECTING ORDER OF COURT.
   Where, on the hearing of a petition by bank depositors asking that the receiver of the bank treat them as general creditors, the evidence showed them to be depositors, but an order was entered declaring them to be creditors, it is within the power of the court, upon a subsequent petition, to correct the order, and declare them to be depositors.

Appeal from Iosco; Connine, J. Submitted April 10, 1902. (Docket No. 42.) Decided June 3, 1902.

Petition by Emil E. Kunze and John Applin, copartners as Kunze & Applin, against the Tawas State Savings Bank, for the correction of an order declaring them to be general creditors of said bank. From an order denying the petition, petitioners appeal. Reversed.

*George L. Cornville,* for petitioners.

*William H. Simpson,* for defendant.

MONTGOMERY, J. The Tawas State Savings Bank became insolvent July 23, 1898. At this date petitioners, according to the books of the bank, were depositors in the sum of $1.09. In October, 1899, they filed their petition,

asking for an order directing the receiver to treat them as
general creditors of the bank in the additional sum of
$1,550. This petition was granted, and such an order
made by Judge Simpson, who was then circuit judge.
Both petition and order recite that petitioners were
depositors, but the prayer of the petition is that they be
made general creditors, and that is the language of the
order. In June, 1901, petitioners filed a new petition,
reciting that, upon the hearing of the former petition, the
proofs showed that they were depositors, and that the
designation of petitioners in the order as "general cred-
itors," instead of "depositors," was a mistake, and asking
to have the order amended by the substitution of the
words "general depositors" for "general creditors."
The petition was denied by Judge Connine, Judge Simp-
son's successor as circuit judge.

The proofs show that petitioners had a contract with
the French Land & Lumber Company, by which petition-
ers purchased of said lumber company certain ties, and
sold the same to the Pontiac, Oxford & Northern Railway
Company, and that petitioners gave the French Land &
Lumber Company their notes for the ties received. $2,850
of these notes were outstanding at the time of the failure
of the bank. They had passed from the lumber company
through the hands of the bank, and had been rediscounted
in Detroit. These facts were unknown to petitioners.
None of the notes were due.

In June, 1898, petitioners deposited in the bank a draft
for $1,425 from the Pontiac, Oxford & Northern Railway
Company, which they had received in payment for ties.
They left their pass-book at the bank to be balanced, and
did not receive it back until after the bank failed. When
they received their pass-book, they discovered for the first
time that Mr. French, who was also cashier of the bank,
had stricken out the credit in the pass-book, and inserted
the memorandum, "Credited to French Land & Lumber
Company," and had also, without their knowledge, made
a memorandum check against their account for $125,

and credited the same to the French Land & Lumber Company. This was done to apply on petitioners' indebtedness to the French Land & Lumber Company, represented by a note for $1,550 at that time held by the First National Bank of Detroit, under the indorsements of the French Land & Lumber Company and the bank, and due July 27th, four days subsequent to the failure of the bank. Mr. French testifies that there was an understanding with petitioners that the money received from the railway company by petitioners at this time should be applied on this note, that the credit of this draft to their account was a mistake, and that he merely corrected it. We think, however, that his testimony fails to make it clear that they agreed to pay this money to the French Land & Lumber Company at a time when the note was beyond the control of said company, making it impossible for the payment to be indorsed thereon, thus relieving petitioners from liability to the holders of the note to the extent of the payment. He nowhere testifies that this was the understanding, or that the agreement to which he testifies was made by petitioners knowing that the French Land & Lumber Company had disposed of the note.

Judge Simpson found, and we think correctly, that the shifting of the deposit of $1,425, and the drawing of the memorandum check for $125, were unwarranted. At that time he could have permitted an amendment to the prayer of the petition, and entered the order now sought, and such a course would have been in accordance with his finding on the facts.

The opinion of the present circuit judge is in part as follows:

"In looking at the original petition, there seems to be considerable doubt whether Mr. Kunze ever attempted to have himself classed as a depositor; and the order that Judge Simpson made in the case does not declare him to be a depositor, and does not make that draft or business item a deposit in the bank. * * * I am unable to find from a preponderance of the evidence that the item involved in this petition was a deposit, or should be so considered

by the court, and for that reason the petition will be denied."

We think the finding that the items were not deposits is in conflict with the undisputed testimony; that it was within the power of the circuit judge to correct the mistake in Judge Simpson's order; and that, as the order appealed from was entered upon the contrary theory, it should be reversed.

HOOKER, C. J., MOORE and GRANT, JJ., concurred. LONG, J., did not sit.